[Civ. No. 13758.   Second Dist., Div. One.   Dec. 1, 1942.]

ROBERT M. ALLAN, Appellant, v. BOARD OF ADMINIS-
TRATION OF THE CITY EMPLOYEES' RETIRE-
MENT SYSTEM OF THE CITY OF LOS ANGELES,
et al., Respondents.

Edward D. McCoy for Appellant.

Ray L. Chesebro, City Attorney, and Robert J. Stahl and Edward J. Olstyn, Deputies City Attorney, for Respondents.

DORAN, J.—Petitioner in the court below sought a writ of mandate to compel respondents to retire petitioner from active service with the city of Los Angeles and to pay petitioner a retirement allowance as provided by section 508 of the charter of the city of Los Angeles. The trial court, after a hearing upon the alternative writ, decreed that petitioner was not entitled to be retired from the service of the city of Los Angeles under the provisions of article XXXIV of the city charter and was not entitled to the payment of any retirement allowance as therein provided; and the court discharged the alternative writ. From that judgment petitioner has taken this appeal.

At the hearing in the court below the parties stipulated to the following facts. Petitioner entered the service of the city of Los Angeles on July 5, 1921, as a member of the city council, and served in that capacity to and including June 30, 1927. Petitioner was appointed a member of the Board of Public Works of the city of Los Angeles on July 17, 1933, and served continuously in that capacity to and including January 31, 1939. Petitioner was nominated by Dr. George Parrish, the general manager of the Health Department, to the Civil Service Department for temporary appointment to the position of meat inspector in the Health Department on July 30, 1941. This last position was included in the classified civil service of the city of Los Angeles, and, at the time of said nomination and request for certification for appointment, there was no register of eligibles for said position. On August 1, 1941, there was no register of eligibles for the position of meat inspector in the Health Department, and the appointment of petitioner to that position was made under and pursuant to the provisions of section 109 of the Charter, which is in part as follows, to wit:

"To prevent the stoppage of public business, or to meet extraordinary exigencies, the head of any department, or any officer or board may, under such regulations as the board may

by its rules prescribe, make temporary appointments in the classified civil service, to remain in force not exceeding sixty days and only until regular appointments, under the provisions of this article, can be made." It was also stipulated that section 12 of rule I, and sections 9 and 10 of rule XV, of the rules and regulations adopted by the Board of Civil Service Commissioners of the city of Los Angeles, are as follows, to wit:

"Sec. 12, Rule I. Temporary appointment shall mean an appointment made under Charter section 109, providing for the employment of persons temporarily when there is no register of eligibles and until such time as regular appointment can be made. This term is synonymous with the term, emergency appointment."

"Sec. 9, Rule XV. In the event that there is no eligible on the appropriate register and the commission is unable to comply with a requisition, or in case the routine procedure of certification would delay and impair the efficiency of operation, in order to prevent the stoppage of public business, or to meet an extraordinary exigency, it may, as provided in section 109 of article IX of the charter, allow an emergency or temporary appointment to be made.

"Such appointment may remain in force only until regular appointment under the provisions of article IX of the Charter can be made."

"Sec. 10, Rule XV. Under section 9, no person shall be appointed temporary-emergency until he has filed an application for the position, appeared personally, and been certified by the commission as being qualified to fill the position. Waiver of these requirements may be made by the commission when emergency situations occur in the construction and maintenance of city property outside of the city of Los Angeles."

Pursuant to the charter and civil service rules and regulations hereinbefore mentioned, a temporary emergency appointment to the position of meat inspector in the Health Department was authorized by the Civil Service Department for a sixty-day period commencing August 1, 1941, and petitioner was, on said August 1, 1941, appointed to said position by Dr. George Parrish, the health officer and general manager of the Health Department. At the time of said appointment petitioner was not on a leave of absence from a civil service

position, and at no time during the period of petitioner's service has he ever held any civil service status.

Petitioner became a member of the City Employees' Retirement System on July 1, 1937, being the effective date of article XXXIV of the city charter. All contributions required to be made by way of salary deduction during the period of petitioner's city service were made and petitioner's accumulated contributions in the retirement fund have not been withdrawn. In this connection, it was further stipulated that a salary deduction was made from the salary paid to petitioner for the period he worked as inspector in the Health Department from August 1, 1941, to August 19, 1941, and that the amount so deducted was paid into said retirement fund and credited to petitioner's accumulated contributions in that fund.

Petitioner did on the 18th day of August, 1941, file his application for voluntary service retirement, to be effective September 20, 1941, in accordance with the rules and regulations of the City Employees' Retirement System and section 508 of the city charter. Petitioner had on or about September 12, 1940, attained the age of sixty years. Petitioner's employment was terminated by Dr. George M. Uhl, then health officer and general manager of the Health Department, on August 19, 1941, on order of the Board of Health Commissioners.

On Friday, August 15, 1941, the payroll clerk of the Health Department first advised the city employees' retirement system, respondents herein, that petitioner had been employed in the Health Department, requested of the City Employees' Retirement System information as to the amount to be deducted from the salary of petitioner; and the payroll clerk was advised that there should be deducted from said salary 7.44% thereof. There was deducted from the salary of petitioner for the period from August 1st to noon of August 15, 1941, the sum of $5.39, and there was deducted from the salary of the petitioner for the period from noon of August 15, 1941, to and including August 19, 1941, the sum of $1.28. The deduction made for the first half of August, 1941, was received at the office of the City Employees' Retirement System and paid into the City Employees' Retirement Fund on the 20th day of August, 1941. The deductions for the period August 15, 1941, to August 19, 1941, hereinabove mentioned, were received and paid into the fund on the 8th day of Sep-

tember, 1941. The salary check for the period from noon of August 15, 1941, to and including August 19, 1941, was received by the petitioner on September 8, 1941. The regular date for the Health Department to receive its payroll was August 20, 1941, but the salary checks for said period were ready for delivery on August 19, 1941.

Petitioner bases his contention that he is entitled to retirement upon the provisions of subdivision B of section 508 of the city charter of Los Angeles, which reads as follows:

"Any member who shall have completed ten (10) or more years of continuous service as defined herein, and who shall have reached the age of sixty (60) years, may be retired upon filing with said Board of Administration a written application for retirement setting forth the date upon which said member desires such retirement to become effective, which said date shall be not less than thirty (30) days nor more than sixty (60) days from and after the date of filing such application."

Subdivision A of section 502 of the Charter of the city of Los Angeles states who shall be members of the retirement system, as follows:

"All employees in city service in the classified civil service of the city under the provisions of this charter, on the 1st day of July, 1937, shall become members of said retirement system, and all persons entering the city service as civil service employees after said date shall, upon the expiration of their probationary period, become members of said system; provided that any employee who would be excluded from membership under the foregoing provisions may become a member of the system upon filing with the Board of Administration a written declaration of his desire to become such member, such written declaration to be filed within thirty (30) days after July 1, 1937, as to all persons in the city service on said date, and within thirty (30) days after the commencement of such city service in the case of all employees entering the service after said date. In the event of such declaration being filed, membership in said system shall be effective, for all purposes of this article, as of the said 1st day of July, 1937, or as of the date of entry into the city service, as the case may be. Nothing herein contained, however, shall permit the inclusion in said system of those persons excluded by the provisions of subdivision B of this section."

Subdivision B reads in part as follows:

"The following employees shall not become members of said retirement system:

"(1)    Elective officers; . . .

"(5)    Employees appointed to temporary positions other than employees who, at the time of such appointment, are not members of said retirement system.

"(6)    Employees serving under emergency appointment to positions in the classified civil service who, at the time of such appointment, are not on a leave of absence from a civil service position. . . ."

Section 501 of the Charter defines "city service" and "service" as follows:

"Service rendered as an employee of the city for compensation, and for the purpose of this article a person shall be considered as being in the city service only while he is receiving compensation from the city for such services."

Section 512 of the Charter provides in part as follows:

"Every member who becomes separated from the service of the city and who does not receive any retirement allowance as provided in this article shall, nevertheless, receive and be paid his accumulated contributions upon written demand made to the Board of Administration; provided that he may permit such accumulated contributions to remain in the fund, in which event should he thereafter, and within three years from the date of his separation from the city service, re-enter such service and as a result of such re-entry again become a member in said retirement system, he shall be entitled to all benefits of this article and his rate of contribution shall be that provided for his age as of his original entry into such system."

█    Petitioner argues that under the Charter of the City of Los Angeles, and particularly by virtue of the provisions of section 512, above quoted in part, where an employee becomes a member of the pension system, this membership continues to survive for three years after the employee leaves the service of the city.   But such is not the plain purport of the language of the charter above quoted.   It is to be noted that section 512 speaks of an employee *again* becoming a member of the retirement system upon re-entry into service.   The plain implication to be derived from the language used, particularly when taken in connection with related sections of the charter, is that membership in the retirement system terminates with

termination of employment. Moreover, the interpretation contended for by petitioner is not consistent with the purpose of article XXXIV of the charter, creating the City Employees' Retirement System, which purpose is expressed in section 513(e) of the charter, as follows: "The purpose of this article is to provide a means whereby superannuated public employees or those incapacitated as a result of age or disability may be replaced by more capable employees, thus promoting economy and efficiency in the public service without prejudice and without inflicting hardship upon the employees removed, and to recognize a public obligation to such employees and to their surviving widows and minor children or dependent parents." The purpose of the article as expressed is to provide a humanitarian means of replacing superannuated or disabled employees in the city service. Where an employee leaves the service before retirement age and without having become otherwise incapacitated, there is no need to provide for a means of replacing him in the service. As to such an employee the article in question merely provides a means of withdrawal of funds previously paid into the retirement fund, or for reinstatement if the employee again re-enters the city service and as a result thereof becomes entitled to membership in the retirement system, within three years from the date of his separation from the service.

As to petitioner's main contention for his right to retirement, no question is here raised as to whether petitioner's years in an elective office as a councilman shall properly be included in his years of continuous service. It appears to have been conceded that petitioner's service was sufficient in this respect, and under the circumstances the point will not be considered. ■ However, petitioner claims that his temporary appointment as a meat inspector entitled him to apply for retirement under the provisions of article XXXIV of the charter. The principal basis for this claim appears to be the contention previously mentioned that petitioner never ceased to be a member of the retirement system. It has already been shown that such a contention is unsound. It remains to be determined whether petitioner's re-entry into city service under temporary appointment as meat inspector resulted in his again becoming a member of the retirement system. By the foregoing stipulation as to facts it must be conceded that petitioner's temporary appointment was one under the category of emergency appointment.

In this connection, the language of section 512 of the charter should be noted. It is there provided that if within three years from the date of his separation from the city service an employee should "re-enter such service and as a result of such re-entry again become a member in said retirement system, he shall be entitled to all benefits of this article." As respondents point out, this language imports two conditions to reinstatement in the retirement system: (1) That the employee shall re-enter city service; (2) That the employee's re-entry shall result in his again becoming a member of the retirement system. In other words, the re-entry into service must be of a nature to entitle the employee to become a member in the retirement system. According to section 502B of the charter, subdivision 6 thereof, employees serving under emergency appointment to positions in the classified civil service who, at the time of such appointment, are not on a leave of absence from a civil service position, shall not become members of said retirement system. The facts as stipulated place petitioner in the class covered by this subdivision of section 502B; and as an employee serving under such emergency appointment petitioner was not entitled to become a member of the retirement system. His re-entry into the service did not result, therefore, in his again becoming a member of the retirement system, and, hence, in accordance with the provisions thereof, he was not entitled to the benefits of article XXXIV of the city charter. As already demonstrated, it cannot be successfully contended that, under section 512 of the charter, re-entry into city service under any and all circumstances entitles a former city employee to again become a member of the retirement system. The re-entry must be in a capacity which results in his again becoming a member in the system.

In connection with petitioner's application for retirement herein, over petitioner's objection there was introduced in evidence in the court below the following excerpt from the minutes of the meeting of the Board of Health Commissioners held August 19, 1941:

"Whereas, it has been called to the attention of the Commission that one Robert M. Allan was given temporary employment in this department as a meat inspector, under classification No. 5153, and

"Whereas, it has been further made to appear to the Commission that the said Robert M. Allan lacks the training and experience reasonably necessary and proper to qualify him to serve as such meat inspector, and

"Whereas, it has also been made to appear the said Robert M. Allan was given such employment in this department, primarily, if not solely, for the purpose of enabling him to be in the employ of the city at a time when he should file an application for a pension, and

"Whereas, it has been further made to appear to the Commission that said Robert M. Allan has filed such an application for a pension, and

"Whereas, this Commission has just been given the information as heretofore set forth and is wholly out of sympathy with such an appointment and employment.

"Now therefore, on motion of Commissioner McCune and seconded by Commissioner John C. Ruddock, it is hereby resolved that the health officer be and he is hereby directed to forthwith dismiss said Robert M. Allan as an employee of this department. Said motion was adopted by the following votes, to wit: Ayes: Commissioners McCune, Ruddock, Casey, Sparling. Noes: None." The specific question of the propriety of introducing such evidence is not here raised by petitioner, nor could such evidence be held prejudicial under the circumstances presented.

■ It is to be noted that the petition for mandate herein alleges that it is the plain mandatory duty of respondents "and a duty specially enjoined upon said respondents by law" to order that petitioner be retired from active duty and service and that he be paid a retirement allowance. Article XXXIV by its provisions clearly invests the Board of Administration of the City Employees' Retirement System with a certain amount of discretion in the administration of the pension system set up under said article. Although the point is not raised by the parties hereto, it may be well to point out that, in view of the provisions of the charter investing the board in question with powers of administration over the retirement system, mandate would not be a proper remedy except to correct a manifest abuse of discretion on the part of the board of administration. It is provided in section 510B of the charter that "said board of administration shall have the power to hear and determine all matters pertaining to the granting or termination of any retirement allowance provided for in this section, and the determination of said board shall be final and conclusive." It should also be added, however, that refusal to grant retirement to

an employee who had met all qualifications therefor might well be held an abuse of the board's powers of discretion.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.